# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| RICHARD PESHKIN, On Behalf Of Himself As An Individual, On Behalf Of Spectrum Select L.P. As A Limited Partner, And On Behalf Of All Others Similarly Situated, | ) ) ) ) )  08-cv-11183 (RMB) |
| Plaintiff, | ) ) |
| v. | ) ) **FIRST AMENDED CLASS ACTION** |
| TREMONT GROUP HOLDINGS, INC., TREMONT PARTNERS, INC., RYE INVESTMENT MANAGEMENT (a.k.a. RYE INVESTMENTS INC.), OPPENHEIMER ACQUISITION CORPORATION, OPPENHEIMERFUNDS, INC., MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY, ROBERT I. SCHULMAN, JIM MITCHELL, JOHN V. MURPHY, KPMG L.L.P., BANK OF NEW YORK MELLON CORPORATION, BNY ALTERNATIVE INVESTMENT SERVICES, INC., SELECT SPECTRUM PARTNERS, LLC, AND JOHN DOES 1-100 INCLUSIVE, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) **AND DERIVATIVE ACTION** <u>**COMPLAINT**</u><br><br><br><u>**JURY TRIAL DEMANDED**</u> |
| Defendants. | ) ) |
| -and- | ) ) |
| RYE SELECT BROAD MARKET FUND LP, RYE SELECT BROAD MARKET PRIME FUND LP, RYE SELECT BROAD MARKET XL FUND LP, AND SPECTRUM SELECT L.P., | ) ) ) ) ) ) |
| Nominal Defendants. | ) ) ) ) |

RECEIVED FEB 25 2009 U.S.D.N.Y. CASHIERS

### FIRST AMENDED CLASS ACTION
### AND DERIVATIVE ACTION COMPLAINT

Plaintiff Richard Peshkin (the "Named Plaintiff" or "Plaintiff") files this Class Action Complaint and Derivative Action Complaint against Defendants Tremont Group Holdings, Inc. ("TGH"), Tremont Partners, Inc. ("TPI"), Rye Investment Management (a.k.a. Rye Investments Inc.) (TGH, TPI, and Rye Investment Management are collectively referred to as "Tremont"), Oppenheimer Acquisition Corporation ("Oppenheimer AC"), OppenheimerFunds, Inc. ("OppenheimerFunds") (Oppenheimer AC and OppenheimerFunds are collectively referred to as "Oppenheimer"), Massachusetts Mutual Life Insurance Company ("MassMutual"), Robert I. Schulman ("Schulman"), Jim Mitchell ("Mitchell"), John V. Murphy ("Murphy") (Oppenheimer, MassMutual, Schulman, Mitchell, and Murphy are collectively referred to herein as "Tremont Affiliates"), KPMG L.L.P. ("KPMG"), Bank of New York Mellon Corporation ("BNY Mellon"), BNY Alternative Investment Services, Inc. ("BNY Alternative") (BNY Mellon and BNY Alternative are collectively referred to as "BNY"), Select Spectrum Partners LLC ("SSP"), and John Does 1-100 Inclusive (collectively, "Defendants"). Plaintiff further asserts his claims derivatively on behalf of nominal defendants Rye Select Broad Market Fund LP ("Rye BM Fund"), Rye Select Broad Market Prime Fund LP ("Rye Prime Fund"), Rye Select Broad Market XL Fund LP ("Rye XL Fund"), and Spectrum Select L.P. ("Spectrum") (collectively, "Nominal Defendants"). Plaintiff alleges the following upon personal knowledge as to himself and his own acts, and as to all other matters upon information and belief, based upon the investigation made by and through his attorneys. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## I.   NATURE OF ACTION

1.   Tremont and the Tremont Affiliates neglected their professional and fiduciary duties to manage the capital invested by the Named Plaintiff and the proposed Class (collectively "Plaintiffs") in and through the Nominal Defendants. In essence, Tremont turned over all of the capital in question to Bernard Madoff ("Madoff") and Bernard Madoff Investment Securities,

Inc. ("BMIS"), who used that capital in a massive Ponzi-scheme. Tremont failed to perform proper due diligence and failed to exercise due care in managing private investments.

2.  Over the past several years, Plaintiffs entrusted billions of dollars in capital to Tremont, who maintained their investments through Rye Investment Management—Tremont's single manager hedge fund division. The Rye Investment Management single manager hedge funds included the Rye BM Fund, Rye Prime Fund, and Rye XL Fund (collectively, the "Rye Broad Market Funds").

3.  Tremont gave virtually all of the money invested through Rye Investment Management to Madoff. This resulted in catastrophic losses to Plaintiffs of roughly $3.1 billion dollars.

4.  Tremont accepted substantial investment advisor service fees in connection with the capital solicited from Plaintiffs. These fees were paid so that Tremont would vet suitable investment managers, assemble a diversified group of investments, follow a professional investment strategy, and conduct ongoing due diligence in order to avoid unnecessary investment risks.

5.  All the while, Tremont neglected and/or abandoned professional oversight of the capital invested by Plaintiffs and their funds, passing all of the capital on to Madoff without safeguards. Madoff then used that capital to pay bogus returns to other investors. Tremont failed to vet Madoff as a suitable investment manager, failed to diversify investments, failed to follow a sustainable investment strategy, and failed to conduct ongoing due diligence.

6.  KPMG provided professional auditing services with respect to certain Rye Broad Market Funds, for which KPMG accepted substantial fees. KPMG failed to conduct due diligence and failed to conduct audits of the Rye Broad Market Funds in accordance with generally accepted auditing standards (GAAS).

7.  BNY provided professional fund administration services to certain Rye Broad Market Funds, for which BNY is believed to have accepted substantial fees. BNY failed to

competently administer the Rye Broad Market Funds and failed to exercise due care so as to verify the fund investments and avoid unnecessary investment risks.

## II.    JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332.  This Court also has personal jurisdiction over Defendants because a substantial portion of the wrongdoing alleged in this Complaint emanates from this state, at least some of the Defendants are based in this state, and all Defendants appear to be authorized to do business here, have sufficient minimum contacts with this state, and/or otherwise intentionally avail themselves of the markets in this state through the marketing and solicitation of investments in this state, so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

9.      Venue in this Court is proper under 28 U.S.C. §1391 because many of the transactions, acts, and practices described herein occurred within the jurisdiction of this district.

## III.   PARTIES

10.     Plaintiff Richard Peshkin is an individual residing in Boca Raton, Florida. Plaintiff invested his capital as a limited partner in Spectrum, and all of Spectrum's capital was invested as a limited partner with the Rye Broad Market Funds (managed and controlled by Tremont).  Tremont turned over the capital invested by Plaintiff and Spectrum to Madoff, and such capital now appears to have been wiped out as a result of the activities alleged herein.

11.     Defendant Tremont Group Holdings, Inc. was formed in 1984 and is based in Rye, New York.  The firm is the holding company for hedge funds, including the Rye Broad Market Funds.  The company is a subsidiary of Oppenheimer Acquisition Corporation.  In addition, Tremont is an affiliate of OppenheimerFunds.

12.     Tremont Partners, Inc. is headquartered in Rye New York.  It is the general partner and manager of the Rye Broad Market Funds, and a subsidiary of Tremont Group Holdings, Inc.

- 3 -

13.     Defendant Rye Investment Management, which also appears to be known as Rye Investments Inc., based in Rye, New York, is a hedge fund group set up as a division of Defendant Tremont Group Holdings, Inc.  Rye Investment Management gave virtually all of its capital in the Rye Broad Market Funds—reported to be roughly $3.1 billion—to Madoff.

14.     Defendant Oppenheimer Acquisition Corporation is a securities investment advisory service company headquartered in New York, New York.  It is a subsidiary of Massachusetts Mutual Life Insurance Company.

15.     Defendant OppenheimerFunds, Inc. is one of the largest asset management companies in the United States.  It is headquartered in New York, New York, and has a number of controlled affiliates.  OppenheimerFunds owns Tremont Group Holdings, Inc.

16.     Defendant Massachusetts Mutual Life Insurance Company, headquartered in Springfield, Massachusetts, is a mutually owned financial protection, accumulation and income management company.  MassMutual and its subsidiaries had more than $500 billion in assets under management at year-end 2007.  MassMutual is the majority owner of OppenheimerFunds.

17.     Defendant MassMutual, as parent company to the Oppenheimer Defendants, and Oppenheimer as parent company to the Tremont Defendants, had the power to exercise complete control over Tremont with respect to the use of Madoff as an investment manager.  On information and belief, Oppenheimer paid a purchase price for Tremont that was roughly 10 times its tangible net worth, and roughly 25 times its net income.  The Tremont Affiliates pushed for high-return investments through use of investment managers like Madoff.  Consequently, Tremont gave virtually all of the Rye Broad Market Funds to Madoff, causing serious financial injury to Plaintiffs.

18.     Defendant Robert Schulman is Tremont's Chairman Emeritus.  Schulman was president, Chief Executive Officer, and Chairman of Tremont's Board through 2006.  According to Schulman, Tremont increased its earnings and revenues five-fold during the 2002 to 2007 time-frame.  In or about 2007, Schulman became president and Chief Executive Officer of Rye

Investment Management to focus on its build-out, until July 2008. Schulman resides in New York, New York.

19.     Defendant Jim Mitchell is and was president and Chief Executive Officer of Rye Investment Management since July 2008.

20.     Defendant John Murphy is and was the Chairman, Chief Executive Officer, and Director at Defendant OppenheimerFunds, Inc. He was also an Executive Vice President of Defendant MassMutual and a Director at Defendant Tremont.

21.     Defendant KPMG L.L.P. is a public accounting firm and a limited liability partnership with operations in New York and around the United States. KPMG provides audit, tax, and advisory services. KPMG LLP is the United States member firm of KPMG International, a Swiss Cooperative that is known as one of the "Big Four" auditing firms.

22.     Defendant Bank of New York Mellon Corporation, through its subsidiary Defendant BNY Alternative Investment Services, Inc., acted as the fund administrator for the Rye Broad Market Funds. BNY is based in New York, New York.

23.     BNY was retained to provide fund administration, valuation, and custodial services to Tremont Partners, including monthly calculation of the Net Asset Value for certain Rye Broad Market Funds. BNY's hedge fund administration services have included: independent portfolio monitoring and valuation, accounting and account reconciliation, coordination of audits, asset management, reconciliation of trading activities, and fulfillment of reporting requirements. One of the main goals of outsourced hedge fund administration is to increase the transparency of investments for fund investors. Obviously, the goals were not met here.

24.     Defendant "Select Spectrum Partners LLC," a Florida limited liability company, is Spectrum's general partner and investment manager. SSP was to manage Spectrum's investment portfolio, and Spectrum's investment objective was to invest in the Rye Broad

Market Funds. SSP was paid management fees based upon the value of limited partners' capital accounts, plus incentive allocations based on capital appreciation.

25.     Upon information and belief, John Does 1-100 ("Doe Defendants") are individuals or entities whose names and addresses are presently unknown. Plaintiffs do not know the specific identities of the Doe Defendants at this time; however, Plaintiffs will amend the Complaint once their identities are learned.

26.     Nominal Defendant Rye Select Broad Market Fund LP is a Delaware limited partnership. All of the monies invested in the Rye BM Fund were given away to Madoff and used in a giant Ponzi-scheme.

27.     Nominal Defendant Rye Select Broad Market Prime Fund LP is a Delaware limited partnership. All of the monies invested in the Rye Prime Fund were given away to Madoff and used in a giant Ponzi-scheme.

28.     Nominal Defendant Rye Select Broad Market XL Fund LP is a Delaware limited partnership. All of the monies invested in the Rye XL Fund were given away to Madoff and used in a giant Ponzi-scheme.

29.     Nominal Defendant Spectrum Select L.P. is a Delaware Limited Partnership formed on or about January 1, 2007 for the express purpose of investing with the Nominal Defendant Rye Broad Market Funds.

## IV.     GENERAL ALLEGATIONS

**The Madoff/BMIS Ponzi-Scheme**

30.     Madoff is a former chairman of the Board of Directors of the Nasdaq stock market. He controls the investment adviser services and finances at BMIS, and he is the sole owner of BMIS, a company which Madoff appears to have founded in the 1960s.

31.     Defendant BMIS is a broker-dealer and investment adviser registered with the SEC. BMIS formally engaged in three operations, which include investment adviser services, market making services, and proprietary trading.

32.     A number of fund managers recently expressed wariness of investing with Madoff because there was little or no transparency to link his reported financial returns to actual securities transactions.

33.     On or about December 10, 2008, Madoff is reported to have told two senior employees that he was "finished," that he had "absolutely nothing," that "it's all just one big lie" and that the business was basically "a giant Ponzi-scheme." In substance, Madoff admitted that he had for years been paying returns to certain investors out of the principal received from other investors. Madoff also stated that BMIS was insolvent, and that it had been for years. Madoff also estimated the losses from this Ponzi-scheme to be approximately $50 billion dollars.

34.     There were several red flags with regard to Madoff's illicit use of investment funds, including the following: (i) Madoff's investment returns appeared to outperform the market with a vengeance despite the fact that money managers rarely beat the market indexes by any substantial amount over time; (ii) Madoff's investment returns appeared to earn steady monthly increases of 1% or more, even when markets went bad; (iii) no one was able to replicate Madoff's remarkable results with the strategies he claimed to be using; (iv) Madoff was not using professional auditors commensurate with the $17 billion that he claimed to have under management (he reported using a tiny office in upstate New York that apparently was not even open all of the time); (v) Madoff claimed to hold publicly traded investments in his own advisory firm, without using a reliable custodian, namely a large, independent financial institution that distributes financial reports directly to investors; (vi) Madoff kept the records of his investment advisory business under lock and key, with little or no internal oversight of his activities; (vii) Madoff's suspicious investment activities had been cited to the SEC on more than one occasion; (viii) Madoff's purported holdings were inconsistent with a complex "split-strike" investment strategy; and (ix) a number of other hedge-fund advisers say that they had examined Madoff's operations and warned investors off.

**Tremont, Tremont Affiliates, and SSP**

35.   Tremont has engaged and continues to engage in the business of managing private capital investments.

36.   Oppenheimer actively engaged in promoting Tremont to the investment community: "In the world of hedge funds, where information is more difficult to obtain than in more conventional financial arenas, Tremont is a name that commands respect. Founded in 1984, Tremont is a global leader in the hedge fund industry." Oppenheimer emphasized Tremont's expertise in managing other fund managers: "Tremont's history and manager expertise bring a strong investment team to the table to work for you. Because of their 'hedge fund of funds' approach, Tremont's team has extensive experience managing other fund managers."

37.   Tremont mismanaged the capital invested by Plaintiff, Spectrum, and other class members. Tremont failed to monitor, oversee, and safeguard that capital. In particular, after turning over all (or virtually all) of the capital in the Rye Broad Market Funds to Madoff as an exclusive investment manager, Tremont abdicated its responsibility to manage, supervise and safeguard that capital.

38.   Tremont was founded by Sandra Manzke in 1985, and sold Madoff-managed investments since 1997. Tremont was chosen to engage in "disciplined risk budgeting and monitoring" and "a strategic investment approach" that is considered "rigorous".

39.   According to Tremont's website: "Effective investment strategies and oversight, thorough manager research, careful due diligence, advanced risk allocation and time-tested portfolio management form the cornerstones of a comprehensive platform that has been refined over a 23-year span of dedicated strides to maximize our clients' objectives." Tremont promised to assess risk at every aspect of its investment process and to provide strong corporate oversight.

40.   Tremont collected substantial "management" fees (e.g., a 1% annual fee based on assets invested in the Rye Broad Market Funds).

41.   Tremont managed a total of about $5.8 billion in investments.  Tremont collected and assumed responsibility for Plaintiffs' capital in the Rye Broad Market Funds reportedly worth $3.1 billion dollars.

42.   Tremont may have pocketed tens of millions of dollars in fees each year selling interests in Tremont funds that were solely managed by Madoff.  Despite accepting substantial fees for managing the Rye Broad Market Funds, Tremont actually gave all (or virtually all) of the capital in Rye Broad Market Funds to Madoff without supervision.

43.   According to Forbes online business news (December 16, 2008): "When asked who was responsible for Rye's investment strategy -- which, essentially, consisted of giving Madoff all the money – [Tremont's spokesman] refused to comment."

44.   Like Tremont and its Affiliates, Defendant SSP was responsible for managing and supervising Spectrum's investments in the Rye Broad Market Funds.

45.   Among other things, Tremont, the Tremont Affiliates, and SSP failed: (a) to perform due diligence as to Madoff's investment activities; (b) to investigate each of the various red flags with regard to Madoff's use of Plaintiffs' capital; (c) to independently verify Madoff's financial statements; (d) to monitor the ongoing risks associated with Madoff's use of Plaintiffs' capital; and (e) to safeguard Plaintiffs' investments from excessive risks of loss.

46.   Defendants' actions, and failures to act, enabled Madoff to plunder the capital that was invested in the Rye Broad Market Funds, thereby injuring Plaintiffs.

**KPMG's Auditing**

47.   KPMG was responsible for planning and performing due diligence in auditing the reported financial results for the Rye Broad Market Funds, confirming compliance with GAAP, reviewing internal controls, independently examining and assessing the evidence in support of reported financial results, and exercising professional skepticism and due care.  In addition, KPMG was responsible for ensuring that its individual auditors properly discharge their special and critical gatekeeping duties.

48.    In fact, KPMG's audits of the Rye Broad Market Funds did not comply with generally accepted auditing standards (GAAS).  KPMG did not plan and perform proper due diligence, nor did it exercise professional skepticism and due care, nor did it obtain and independently examine sufficient evidence as to the use of the capital invested in Tremont's Rye Broad Market Funds, nor did it ensure that its own individual auditors properly discharged their gatekeeping duties.  As a result, the KPMG audits missed that virtually all of the capital invested in the Rye Broad Market Funds were being used in a massive Ponzi-scheme.

49.    Had KPMG competently performed its auditing services, it would have identified critical discrepancies in the Rye Broad Market Fund accounts, activities, and financial statements.

**BNY's Fund Administration**

50.    BNY Alternative entered into one or more service agreements with the Rye Broad Market Funds to provide administration, valuation, and custodial services, including monthly calculation of the Net Asset Value of certain Rye Broad Market Funds.  This required BNY to conduct independent determinations of the funds' assets and liabilities.  One of the primary objectives of selecting BNY to administer the funds was to provide a quality accounting and tailored administrative services.

51.    BNY was responsible for performing certain day-to-day administration tasks on behalf of the Rye Broad Market Funds, including: (i) calculating daily or periodic portfolio valuations using independent pricing sources, (ii) reconciling cash and portfolio positions, (iii) providing electronic interface with prime brokers and custodians, (iv) processing corporate actions, (v) providing portfolio reporting, (vi) maintaining books and records, (vii) calculating all fund fees (performance and asset based), (viii) reconciling general ledger accounts, (ix) calculating and disseminating daily or periodic net asset values, (x) preparing periodic financial statements, (xi) coordinating annual audits, (xii) communicating with limited partners, (xiii) communicating with others relating to the Rye Broad Market Funds, (xiv) processing

subscriptions of new limited partners, (xv) maintaining the registers of limited partners, (xvi) disbursing distributions with respect to the interests, legal fees, accounting fees, and officers' fees, and (xvii) conducting meetings of limited partners and the General Partner.  In addition, BNY was responsible for providing certain custodial services to the Rye Broad Market Funds.

52.     As the professional administrator for the Rye Broad Market Funds, BNY was in a position such that it independently should have monitored and valued the Rye Broad Market Fund holdings, reconciled the Rye Broad Market Fund accounts, trading activities, and financial statements.

53.     In this case, BNY missed the fact that virtually all of the capital invested in the Rye Broad Market Funds was being used in a massive Ponzi-scheme.

54.     Had BNY competently performed its services, it would have identified critical discrepancies in the Rye Broad Market Fund accounts, activities, and financial statements.

## V.     CLASS ACTION ALLEGATIONS

55.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a proposed Class consisting of all persons or entities who, directly or indirectly, had capital invested with or through Rye Investment Management (a division of Tremont Group Holdings, Inc.) including the Rye Select Broad Market Fund, Rye Select Broad Market Prime Fund, and/or Rye Select Broad Market XL Fund, as of December 11, 2008.  Excluded from the proposed Class are Defendants, their officers and directors, and members of their immediate families or their legal representatives, heirs, successors or assigns, and any entity in which Defendants have or had a controlling interest.

56.     The members of the proposed Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are several hundred, if not thousands, of members in the proposed Class.  Members of the proposed Class may be identified from records maintained by the Defendants.

57.   Plaintiff's claims are typical of the claims of the members of the proposed Class as all members of the proposed Class are similarly affected by Defendants' wrongful conduct as alleged herein.

58.   Plaintiff will fairly and adequately protect the interests of the members of the proposed Class and has retained counsel competent and experienced in complex class litigation.

59.   Common questions of law and fact exist as to all members of the proposed Class and predominate over any questions solely affecting individual members of the proposed Class. Among the questions of law and fact common to the proposed Class are:

    a.   Whether Defendants owed fiduciary duties to Plaintiffs as alleged herein, including without limitation the following duties:

       i.   To exercise due diligence and reasonable care in vetting investment managers and the use of Plaintiffs' capital;

       ii.   To manage, monitor, oversee and safeguard Plaintiffs' capital;

       iii.   To perform competent audits; and/or

       iv.   To perform competent fund administration.

    b.   Whether Defendants breached any or all of their fiduciary duties to Plaintiffs; and

    c.   To what extent the members of the Class have sustained damages, and the proper measure of damages.

60.   A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joining all members is impracticable, and this action will be manageable as a class action.

**VI.   ADDITIONAL DERIVATIVE ACTION ALLEGATIONS**

61.   The Named Plaintiff, Richard Peshkin, is a limited partner of Nominal Defendant Spectrum, which is a limited partner of the Rye Broad Market Fund Nominal Defendants

- 12 -

(including Rye Select Broad Market Fund LP, Rye Select Broad Market Prime Fund LP, and Rye Select Broad Market XL Fund LP).

62.     Plaintiff Peshkin brings this action derivatively for the benefit of the Nominal Defendants to redress the injuries suffered by the Nominal Defendants as a result of the alleged misconduct.  Rye Select Broad Market Fund LP, Rye Select Broad Market Prime Fund LP, and Rye Select Broad Market XL Fund LP, and Spectrum are named as Nominal Defendants solely in a derivative capacity.

63.     Plaintiff Peshkin asserts that: (a) he was or is a limited partner of record in Spectrum at the time of transactions of which he now complains; (b) Spectrum was or is a partner of record in Rye Select Broad Market Fund LP, Rye Select Broad Market Prime Fund LP, and Rye Select Broad Market XL Fund LP at the time of transactions of which Plaintiff Peshkin now complains.

64.     Plaintiff Peshkin was a limited partner of Nominal Defendant Spectrum, which was a limited partner of the Rye Broad Market Fund Nominal Defendants, at the time the Madoff Ponzi-scheme was revealed on or about December 11, 2008.

65.     This action is not a collusive one to confer jurisdiction that the court would otherwise lack.

66.     Plaintiff Peshkin has not made efforts to have the general partners of Nominal Defendants bring suit based on the claims asserted herein.  Plaintiff Peshkin has not made such efforts for the following reasons.

        a.   Demand upon the general partners of the Nominal Defendants to bring an action on behalf of the limited partnerships asserting the claims herein would be futile.  The general partners are actually or potentially liable to Plaintiffs and the Nominal Defendants for the alleged misconduct described herein.

        b.  The general partners of the limited partnerships are Defendants, and cannot be expected to prosecute claims against themselves.  It would be a useless act to

demand that they bring suit against themselves on behalf of the partnerships. Indeed, despite catastrophic losses being revealed on or about December 11, 2008, the general partner Defendants have not asserted any legal claims against themselves.

c.  The unlawful acts and practices alleged herein cannot be effectively defended by the general partners of the limited partnerships, who face substantial exposure to liabilities.  The general partners thereby suffer from irreconcilable conflicts of interest.

d.  In addition, the general partners have additional conflicts of interest due to the uncertain tax consequences of litigating as a named plaintiff.

## VII.   CLAIMS FOR RELIEF

### FIRST CLAIM:
### BREACH OF FIDUCIARY DUTY BY INVESTMENT MANAGERS
### (CLASS CLAIM AGAINST TREMONT, TREMONT AFFILIATES, AND SSP)

67.   Paragraphs 1 thorough 60 are realleged and incorporated by reference as if set forth fully herein.

68.   The Named Plaintiff and members of the proposed class entrusted their capital to Defendants, and Defendants accepted substantial management fees in accepting that capital. Defendants therefore assumed and owed the following fiduciary duties (among others):

a.  The duty to use reasonable care, and the competence of a skilled investment advisor, when performing due diligence;

b.   The duty to use reasonable care, and the competence of a skilled investment advisor, in selecting between investment opportunities;

c.  The duty to use reasonable care, and the competence of a skilled investment advisor, in managing and overseeing capital entrusted to the fiduciary; and

d.  The duty to use reasonable care, and the competence of a skilled investment advisor, to safeguard capital entrusted to the fiduciary.

69.     Defendants breached their fiduciary duties owed to the Named Plaintiff and the members of the proposed class.  Among other things:

    a.   Defendants failed to perform proper due diligence;

    b.   Defendants failed to manage Plaintiffs' investments;

    c.   Defendants failed to use reasonable care, or the competence or skill of a professional investment advisor, to avoid the unlawful Ponzi-scheme operated by Madoff and BMIS;

    d.   Defendants failed to use reasonable care, or the competence or skill of a professional investment advisor, when they gave to Madoff and BMIS all of the capital that had been invested by the plaintiff class; and

    e.   Defendants failed to use reasonable care, or the competence or skill of a professional investment advisor, when they abandoned management and oversight of capital invested by the plaintiff class.

70.     The Tremont and Tremont Affiliate Defendants acted with negligence and/or gross negligence in breaching their fiduciary duties.  Defendant SSP acted with gross negligence in breaching its fiduciary duties.  As a direct and proximate result of Defendants' breaches of fiduciary duties, the Named Plaintiff and the members of the proposed plaintiff class lost their investment capital, and thereby suffered damages in an amount to be proven at trial.

## SECOND CLAIM:
## BREACH OF FIDUCIARY DUTY BY AUDITOR
## (CLASS CLAIM AGAINST KPMG)

71.     Paragraphs 1 thorough 60 are realleged and incorporated by reference as if set forth fully herein.

72.     In exchange for substantial service fees, KPMG agreed to provide rigorous independent audits with respect to Tremont's financial reports.  The Named Plaintiff and the members of the plaintiff class were intended beneficiaries of the audits.  Therefore, KPMG owed

a duty to the plaintiff class to audit Tremont's financial reports diligently, independently, competently, and consistent with GAAS.

73.     As a result of its auditing activities, KPMG should have identified that Tremont's reported financial results were inconsistent with Generally Accepted Accounting Principles. KPMG also should have identified that Tremont did not have sufficient evidence regarding capital under Madoff's control to support the audits.

74.     KPMG breached its fiduciary duties to perform diligent independent audits of Tremont's financial reports consistent with GAAS.  Among other things:

     a. KPMG missed the excessive risks of loss associated with Tremont giving its entire $3.1 billion dollar Rye Broad Market Funds to Madoff;

     b. KPMG missed the red flags with respect to the Madoff Ponzi-scheme that would be apparent from diligent auditing;

     c. KPMG failed to perform effective control testing to ensure the accuracy of Tremont's financial reports;

     d. KPMG failed to exercise professional skepticism and due care when auditing Tremont's financial reports; and

     e. KPMG approved of Tremont's financial reports without sufficient evidence to do so, and despite the fact that Tremont's financial reports were not in conformity with GAAP.

75.     Defendant KPMG acted with negligence and/or gross negligence in breaching its fiduciary duties.  As a direct and proximate result of Defendant KPMG's breach of fiduciary duties, the Named Plaintiff and the members of the plaintiff class lost their investment capital, and thereby suffered damages in an amount to be proven at trial.

**THIRD CLAIM:**
**BREACH OF FIDUCIARY DUTY BY ADMINISTRATOR DEFENDANTS**
**(CLASS CLAIM AGAINST BNY MELLON AND BNY ALTERNATIVE)**

76.     Paragraphs 1 thorough 60 are realleged and incorporated by reference as if set forth fully herein.

77.     BNY agreed to provide administration services for certain of the Rye Broad Market Funds in exchange for substantial professional fees.  BNY's responsibilities included (without limitation): independently valuing and reconciling the fund holdings, providing custodial services, assisting with preparation of financial statements and audits, and determining fund disbursements.  BNY received monthly administration fees for serving as a Rye Broad Market Fund administrator.  The fees accrued by BNY were based on the net assets of the underlying Rye Broad Market Funds.

78.     The Named Plaintiff and the members of the proposed class were intended beneficiaries of the fund administration services.  Therefore, BNY owed a duty to Plaintiffs to diligently, independently, and competently administer the Rye Broad Market Funds.

79.     As a result of its position as fund administrator, BNY should have monitored, valued, and reconciled the Rye Broad Market Fund holdings, trading activities, and accounts.

80.     BNY breached its fiduciary duties to Plaintiffs by, among other things:

a.   Failing to monitor the Rye Broad Market Fund holdings and trading activities;

b.   Failing to use due care in valuing the Rye Broad Market Fund holdings;

c.   Failing to use due care in reconciling the Rye Broad Market Fund accounts;

d.   Failing to provide the requisite custodial services;

e.   Failing to use due care in assisting with the financial statements and audits;

f.   Failing to use due care in determining fund disbursements; and otherwise

g.   Missing the fact that virtually all of the capital invested in the Rye Broad Market Funds was being used in a massive Ponzi-scheme.

81. The BNY Defendants acted with gross negligence in breaching their fiduciary duties. As a direct and proximate result of BNY's breach of fiduciary duties, the Named Plaintiff and the members of the proposed class lost their investment capital, and thereby suffered damages in an amount to be proven at trial.

### FOURTH CLAIM:
### UNJUST ENRICHMENT
### (CLASS CLAIM AGAINST ALL DEFENDANTS)

82. Plaintiffs incorporate by reference and re-allege the allegations contained in the foregoing paragraphs 1 through 60 as if set forth fully herein.

83. Tremont, Tremont Affiliates, and KPMG acted with negligence and/or gross negligence in breaching their fiduciary duties. Defendants SSP and BNY also acted with gross negligence in breaching their fiduciary duties. As a result of Defendants grossly negligent breaches of fiduciary duty, and practice of charging fees for investment management services that were not duly performed, Defendants have received a monetary benefit from the Named Plaintiff and the members of the proposed Class in the form of professional fees, which were unearned and unreasonable and made in violation of New York law.

84. Defendants are aware of their receipt of the above-described benefits.

85. Defendants received the above-described benefits to the detriment of the Named Plaintiff and members of the proposed Class; Defendants continue to retain the above-described benefits.

86. The Named Plaintiff and all proposed Class members were injured in that their capital was lost, and the reasonable value of the use thereof was lost. Plaintiffs were further injured because they paid substantial investment management fees for services that they did not receive.

87. The wrongful acts alleged above were substantial and proximate causes of injuries to Plaintiffs, and as a result of the unjust enrichment, they have sustained injuries in an amount to

be determined at trial. Plaintiffs have no other adequate remedy at law for their unjust enrichment claim.

88. On behalf of the proposed Class, Plaintiff Peshkin seeks restitution or disgorgement of Defendants' enrichment benefits.

## FIFTH CLAIM:
## DERIVATIVE CLAIM FOR BREACH OF FIDUCIARY DUTY AGAINST INVESTMENT MANAGER DEFENDANTS (TREMONT, TREMONT AFFILIATES, AND SSP)

89. Paragraphs 1 through 54, and Paragraphs 61 through 65, are realleged and incorporated by reference as if set forth fully herein.

90. Plaintiff asserts this claim derivatively on behalf of the Nominal Defendant funds. The Nominal Defendant funds entrusted substantial investment capital to Defendants, and Defendants accepted substantial management fees in accepting that capital. Defendants therefore assumed and owed the following fiduciary duties (among others):

    a. The duty to use reasonable care, and the competence of a skilled investment advisor, when performing due diligence;

    b. The duty to use reasonable care, and the competence of a skilled investment advisor, in selecting between investment opportunities;

    c. The duty to use reasonable care, and the competence of a skilled investment advisor, in managing and overseeing capital entrusted to the fiduciary; and

    d. The duty to use reasonable care, and the competence of a skilled investment advisor, to safeguard capital entrusted to the fiduciary.

91. Defendants breached their fiduciary duties owed to the Nominal Defendant funds. Among other things:

    a. Defendants failed to perform proper due diligence;

    b. Defendants failed to manage the capital invested in and through the Nominal Defendant funds;

- 19 -

    c.   Defendants failed to use reasonable care, or the competence or skill of a professional investment advisor, to avoid the unlawful Ponzi-scheme operated by Madoff and BMIS;

    d.   Defendants failed to use reasonable care, or the competence or skill of a professional investment advisor, when they gave to Madoff and BMIS all of the capital that had been invested in and through the Nominal Defendant funds; and

    e.   Defendants failed to use reasonable care, or the competence or skill of a professional investment advisor, when they abandoned management and oversight of the capital invested in and through the Nominal Defendant funds.

92.    The Tremont and Tremont Affiliate Defendants acted with negligence and/or gross negligence in breaching their fiduciary duties. Defendant SSP acted with gross negligence in breaching its fiduciary duties. As a direct and proximate result of Defendants' breaches of fiduciary duties, the Named Plaintiff and the Nominal Defendants lost their investment capital, and thereby suffered damages in an amount to be proven at trial.

**SIXTH CLAIM:**
**DERIVATIVE CLAIM FOR BREACH OF FIDUCIARY DUTY**
**AGAINST AUDITOR DEFENDANTS (KPMG)**

93.    Paragraphs 1 through 54, and Paragraphs 61 through 65, are realleged and incorporated by reference as if set forth fully herein.

94.    Plaintiff asserts this claim derivatively on behalf of the Nominal Defendant funds. In exchange for substantial service fees, KPMG agreed to provide rigorous independent audits with respect to Tremont's financial reports. The Nominal Defendant funds were intended beneficiaries of the audits and recipients of account statements based on the audits. Therefore, KPMG owed a duty to the Nominal Defendant funds to audit Tremont's financial reports diligently, independently, competently, and consistent with GAAS.

95.     As a result of its auditing activities, KPMG should have identified that Tremont's reported financial results were inconsistent with Generally Accepted Accounting Principles. KPMG also should have identified that Tremont did not have sufficient evidence regarding capital under Madoff's control to support the audits.

96.     KPMG breached its fiduciary duties to perform diligent independent audits of Tremont's financial reports consistent with GAAS.  Among other things:

    a.   KPMG missed the excessive risks of loss associated with Tremont essentially giving its entire $3.1 billion dollar Rye Broad Market Funds to Madoff;

    b.   KPMG missed the red flags of the Madoff Ponzi-scheme;

    c.   KPMG failed to perform effective control testing to ensure the accuracy of Tremont's financial reports;

    d.   KPMG failed to exercise professional skepticism and due care when auditing Tremont's financial reports; and

    e.   KPMG approved of Tremont's financial reports without sufficient evidence to do so, and despite the fact that Tremont's financial reports were not in conformity with GAAP.

97.     Defendant KPMG acted with negligence and/or gross negligence in breaching its fiduciary duties.  As a direct and proximate result of KPMG's breach of fiduciary duties, the Named Plaintiff and Nominal Defendants lost their investment capital, and thereby suffered damages in an amount to be proven at trial.

## SEVENTH CLAIM:
## DERIVATIVE CLAIM FOR BREACH OF FIDUCIARY DUTY
## AGAINST ADMINISTRATOR DEFENDANTS
## (BNY MELLON AND BNY ALTERNATIVE)

98.     Paragraphs 1 through 54, and Paragraphs 61 through 65, are realleged and incorporated by reference as if set forth fully herein.

99.    Plaintiff asserts this claim derivatively on behalf of the Nominal Defendant funds. BNY agreed to provide administration services to certain of the Rye Broad Market Funds in exchange for substantial professional fees.  BNY's responsibilities included (without limitation): independently valuing and reconciling the fund holdings, providing custodial services, assisting with preparation of financial statements and audits, and determining fund disbursements.  BNY received monthly administration fees for serving as the Rye Broad Market Fund administrator. The fees accrued by BNY were based on the net assets of the Rye Broad Market Funds.

100.    The Nominal Defendants were intended beneficiaries of the fund administration services.  Therefore, BNY owed a duty to the Nominal Defendants to diligently, independently, and competently administer the Rye Broad Market Funds.

101.    As a result of its position as fund administrator, BNY should have monitored, valued, and reconciled the Rye Broad Market Fund holdings, trading activities, and accounts.

102.    BNY breached its fiduciary duties to the Nominal Defendants by, among other things:

    a.  Failing to monitor the Rye Broad Market Fund holdings and trading activities;

    b.  Failing to use due care in valuing the Rye Broad Market Fund holdings;

    c.  Failing to use due care in reconciling the Rye Broad Market Fund accounts;

    d.  Failing to provide the requisite custodial services;

    e.  Failing to use due care in assisting with the financial statements and audits;

    f.  Failing to use due care in determining fund disbursements; and otherwise

    g.  Missing a massive Ponzi-scheme that covered virtually all of the capital invested in the Rye Broad Market Funds.

103.    The BNY Defendants acted with gross negligence in breaching their fiduciary duties.  As a direct and proximate result of BNY's breach of fiduciary duties, the Named Plaintiff and the Nominal Defendants lost their investment capital, and thereby suffered damages in an amount to be proven at trial.

## EIGHTH CLAIM:
## DERIVATIVE CLAIM FOR UNJUST ENRICHMENT
## (AGAINST ALL DEFENDANTS)

104.     Paragraphs 1 through 54, and Paragraphs 61 through 65, are realleged and incorporated by reference as if set forth fully herein.

105.     Tremont, Tremont Affiliates, and KPMG acted with negligence and/or gross negligence in breaching their fiduciary duties. Defendants SSP and BNY also acted with gross negligence in breaching their fiduciary duties. As a result of Defendants breaches of fiduciary duty, and practice of charging fees for investment management services that were not duly performed, Defendants have received a monetary benefit from the Nominal Defendant funds in the form of professional fees, which were unearned and unreasonable and made in violation of New York law.

106.     Defendants are aware of their receipt of the above-described benefits.

107.     Defendants received the above-described benefits to the detriment of the Named Plaintiff and the Nominal Defendant funds; Defendants continue to retain the above-described benefits.

108.     The Named Plaintiff and the Nominal Defendant funds were injured in that their capital was lost, and the reasonable value of the use thereof was lost. The Named Plaintiff and the Nominal Defendant funds were further injured because they paid substantial investment management fees for services that they did not receive.

109.     The wrongful acts alleged above were substantial and proximate causes of injuries to the Named Plaintiff and the Nominal Defendant funds, and as a result of the unjust enrichment, they have sustained injuries in an amount to be determined at trial. The Named Plaintiff and the Nominal Defendant funds have no other adequate remedy at law for their unjust enrichment claim.

110.    Derivatively on behalf of the Nominal Defendant funds, Plaintiff Peshkin seeks restitution and disgorgement of Defendants' enrichment benefits.

## VIII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

A.    Determining that this action is a proper class action, designating the Named Plaintiff as Lead Plaintiff and certifying the Named Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure, and Plaintiff's counsel as Lead Counsel;

B.    Awarding compensatory damages in favor of the Named Plaintiff and the proposed Class against all Defendants (other than Nominal Defendants), jointly and severally, for all damages sustained as a result of Defendants' wrongdoing in an amount to be proven at trial, including any interest thereon;

C.    Awarding compensatory damages in favor of the Named Plaintiff, derivatively for the Nominal Defendants, against all Defendants (other than the Nominal Defendants), jointly and severally, for all damages sustained as a result of Defendants' wrongdoing in an amount to be proven at trial, including any interest thereon;

D.    Awarding the Named Plaintiff and the proposed Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E.    Such other and further relief as the Court may deem just and proper.

## IX.   DEMAND FOR JURY TRIAL

Plaintiff Peshkin hereby demands a trial by jury, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, of all issues so triable.

HAGENS BERMAN SOBOL SHAPIRO LLP


By _____
     DAVID S. NALVEN (DN-2374)

One Main Street, 4th Floor
Cambridge, MA, 02142-1531
Telephone: (617) 482-3700
Facsimile: (617) 482-3003

410 Park Avenue, Suite 1530
New York, NY, 10022
Telephone: (212) 231-8378
Facsimile: (212) 231-8379

STEVE W. BERMAN
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

REED KATHREIN
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (501) 725-3001

LEE M. GORDON
HAGENS BERMAN SOBOL SHAPIRO LLP
700 South Flower St., Suite 2940
Los Angeles, CA  90017-4101
Telephone: (213) 330-7150
Facsimile: (213) 330-7152

*Attorneys for Plaintiff and the Proposed Class*

Dated: February 24, 2009

## CERTIFICATE OF SERVICE

    I, David S. Nalven, hereby certify that I am one of plaintiff's attorneys and that, on this day I caused copies of the papers annexed hereto to be served on all counsel of record in this action via by hand filing with the clerk's office resulting in CM/ECF posting.

_____

Dated: February 24, 2009

- 25 -

## VERIFICATION

I, RICHARD PESHKIN, hereby declare:

I am a named Plaintiff and prospective class representative in this action. I have read the "FIRST AMENDED CLASS ACTION AND DERIVATIVE ACTION COMPLAINT" in this case, and know its contents. The matters stated in the complaint are true and correct to the best of my own knowledge as to my own affairs, and if sworn as a witness, I could and would testify thereto. As to all other matters, I am informed and believe them to be true based on the investigation of counsel and on public reports.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this Verification was executed on the 23 day of February, 2009 in _Boca Raton_, Florida.

RICHARD PESHKIN