IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE TREMONT SECURITIES LAW, STATE LAW AND INSURANCE LITIGATION<br><br>**This Document Relates To:**<br><br>**All Actions** | Master File No.: 08 Civ. 11117 (TPG) |

**NOTICE OF INTENTION TO APPEAR AT THE FAIRNESS HEARING AND OBJECTION BY SPECTRUM SELECT II, L.P. AND SPECTRUM EQUITIES, L.P. TO FAIRNESS OF SETTLEMENT, PLAN OF ALLOCATION, AND REQUESTED ATTORNEYS' FEES, OR, ALTERNATIVELY, MOTION TO INTERVENE**

Class members are free to settle their claims for pennies on the dollar and allow class counsel to become rich. Class members may not, however, appropriate funds for themselves or for class counsel that should be distributed to putative class members who choose to opt out. Here, the proposed class settlement is not fair because it improperly diverts funds from opt-outs. In addition, the Plan of Allocation impermissibly purports to govern distributions from the Fund Distribution Account to opt-outs. Therefore, Spectrum Select II, L.P. and Spectrum Equities, L.P. (hereafter the "Spectrum Funds") hereby give notice of their intent to appear at the Fairness Hearing on June 1, 2011 and submit this Objection to the proposed settlement, Plan of Allocation, and request for attorneys' fees in the above-referenced actions (the "Proposed Settlement"), or in the alternative, move to intervene under Rule 24.[1]

---

[1] As required by the April 5, 2011 Order Directing Notice and Setting Final Fairness Hearing in Connection with Motion for Approval of Proposed Settlement and Motion for Attorneys' Fees and Expenses, the contact information for each of the Spectrum Funds and their respective ending dollar balances at the close of business on December 11, 2008 are set forth in Appendix 1.

1

## ARGUMENT

The Spectrum Funds do not object to settling class members receiving $100 million and giving 30 percent of it to class counsel. They do object, however, to having the Court divert funds that would otherwise be distributable to opt-outs, like the Spectrum Funds. Under Rule 23(e)(2), a class action settlement can only be approved if it is "fair." In determining what is "fair," the Second Circuit has noted that "[w]here the rights of third parties are affected, . . . their interests too must be considered." *In re Masters Mates & Pilots Pension Plan & IRAP Litig.*, 957 F.2d 1020, 1026 (2d Cir. 1992). Thus, "where the rights of one who is not a party to a settlement are at stake, the fairness of the settlement to the settling parties is not enough to earn the judicial stamp of approval." *Id.*

Because "[c]lass action settlements typically leave intact the legal claims of others . . . , nonsettling parties in multiparty cases ordinarily lack standing to object to settlements." 4 *Newberg on Class Actions* § 11:55 (4th ed.). "An exception to the general rule precluding objections from opt-outs or nonparties exists when they are able to demonstrate prejudice from the settlement," meaning "plain legal prejudice [such] as when the settlement strips the party of a legal claim or cause of action." *Id.*

Thus, this Court has permitted an objection by non-party defendants when a class action settlement would have prejudiced their rights in potential claims for contribution. *See Altman v. Liberty Equities Corp.*, 54 F.R.D. 620, 623-25 (S.D.N.Y. 1972); *see also Quad/Graphics, Inc. v. Fass*, 724 F.2d 1230, 1232 (7th Cir. 1983) (described this Court's ruling in *Altman* as "implicitly finding that the non-settling defendants had standing to be heard on the issue"). Alternatively, if non-class members do not possess sufficient standing to object, "it may be appropriate for a nonclass member to state her or his opposition to a class settlement through intervention pursuant

2

to Rule 24." *See* 4 *Newberg on Class Actions* § 11:55; *see also* Fed. R. Civ. P. 24(a)(2) (allowing intervention of right to anyone who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may . . . impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest").

I. **The Proposed Settlement Impermissibly Transfers Property Belonging To Opt-Outs.**

Here, the Proposed Settlement is not fair because it prejudices opt-outs, and impairs or impedes their interests, in three ways.

*First*, in addition to seeking $30 million, which is 30 percent of the Gross Settlement Fund (the "Settlement Fund"), class counsel seeks 3 percent of the Fund Distribution Account. (*E.g.*, Joint Declaration in Support of Plaintiffs' State and Securities Law Settlement Class Counsels' Motion for Attorneys' Fees (Docket No. 452) at ¶ 118.) The Fund Distribution Account is the account, among other things, "for distribution of the Remaining Fund Proceeds to the Fund Distribution Claimants." (Settlement Agreement (Ex A. to Joint Declaration in Support of Settlement) (Docket No. 438-1) at ¶ 1.19.) The "Remaining Fund Proceeds," in turn, means "(i) all amounts remaining in the Rye Funds . . . after resolution of the Settling Funds' claims in or relating to the Madoff Trustee Proceedings; and (ii) all amounts the Tremont Funds would otherwise be entitled to from the Fund Distribution Account as a result of the Tremont Funds' investments in the Rye Funds." (*Id.* at ¶ 1.50.) The settlement agreement defines the "Madoff Trustee Proceedings" as the Madoff-related cases filed in the Bankruptcy Court in the Southern District of New York, pending before the Honorable Burton R. Lifland and with Irving H. Picard as Trustee. (*Id.* at ¶ 1.33.) The Settlement Agreement defines "Fund Distribution Claimants" as

3

"*any* limited partner or shareholder in *any* of the Settling Funds" (*id.* at ¶ 1.18 (emphasis added)), a term that includes persons opting out of the class.

By seeking a fee award from the Fund Distribution Account, class counsel seeks to impose a tax upon all putative class members, regardless of whether they participate in the Proposed Settlement or receive any benefit from class counsel. This 3 percent fee on the Fund Distribution Account is especially unreasonable given the fact that the amounts distributed through the Fund Distribution Account were recovered through the efforts of the SIPC Trustee, not class counsel. Because the funds that will be provided to the Fund Distribution Account were not recovered by class counsel, class counsel's invocation of the "common fund doctrine" provides no basis for awarding them fees from the Fund Distribution Account. Instead, an attorney is only entitled to such fees "where an attorney creates a common fund." (Memorandum of Law In Support of Plaintiffs' State and Securities Law Settlement Class Counsels' Motion for Attorneys' Fees (Docket No. 448) at 8 (quoting *In re Interpublic Sec. Litig.*, No. Civ. 02-6527 (DLC), 2004 WL 2397190, at *10 (S.D.N.Y. Oct. 26, 2004)).) Class counsel here have not "create[d]" the Fund Distribution Account, and thus are not entitled to a 3 percent fee under the common fund doctrine.[2] Thus, by charging a fee on the Fund Distribution Account, which was not created by class counsel and which belongs to all limited partners of the Settling Funds, the Proposed Settlement adversely affects the rights of opt-outs and fails the fairness requirement of Rule 23(e)(2).[3]

---

[2]  The Spectrum Funds also join the objection of Meridian Horizon Fund, LP, Meridian Horizon Fund II, LP, Meridian Diversified Fund, LP, Meridian Diversified Fund, Ltd., Meridian Diversified ERISA Fund, Ltd., Meridian Diversified Compass Fund, Ltd., and Meridian Absolute Return ERISA Fund, Ltd. (the "Meridian Funds") and hereby incorporate by reference the arguments made therein.

[3]  Even if the "common fund" doctrine were applicable here (which it is not, as discussed above), imposing such a tax on opt-outs is blatantly inappropriate. It is black letter law that the

This 3 percent fee by class counsel will likely be result in a significant tax on opt-outs. The Trustee estimates that he has recovered more than $7.6 billion for distribution to Madoff customers in the SIPC proceedings. (Trustee's Motion for an Order Approving an Initial Allocation of Property (Docket No. 4048 in *Securities Investor Protection Corp. v. Bernard L. Madoff Investment Securities LLC* and *In re Bernard Madoff Investment Securities LLC, Debtor*, Adv. Pro. No. 08-01789 (BRL) (Bankr. S.D.N.Y.)) at ¶ 6.)[4] In this case, putative class members who invested in the Rye Funds have their losses estimated at about $1.65 billion. (*E.g.*, Memorandum of Law In Support of Settling Class Plaintiffs' Motion for Final Approval of Partial Class Settlement (Docket No. 437) at 16.) For the sake of easy math, assume that slightly fewer than one-third of the putative class members opt out. Under such circumstances, their losses total $500 million. If the Rye Funds were made whole by various actions (*i.e.*, the Fidelity Bond litigation, the Madoff Trustee Proceedings, any suits against KPMG, E&Y, or Bank of NY Mellon, and cash contributions from Oppenheimer and Mass Mutual), class counsel is proposing to take $15 million that otherwise belongs to putative class members who are or have opted out of this case. There is no legal or factual basis to support this wrongful appropriation of $15

---

common fund doctrine was created to prevent unjust enrichment. *Miles v. Electric Auto-Lite Co.*, 396 U.S. 375, 392 (1970); *Fleischman Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 719 (1967); *Grace v. Ludwig*, 484 F.2d 1262, 1269 (2d Cir. 1973). There can be no unjust enrichment unless a benefit is conferred and knowingly accepted. *See, e.g., Haynes v. Rederi A/S Aladdin*, 362 F.2d 345, 351 (5th Cir. 1966) (common fund-type doctrine applies only when "parties sought to be held liable for fees can be said to have either expressly or impliedly accepted the attorneyship and its benefits"). Opt-outs, by definition, do not accept the benefits supposedly conferred by class counsel; thus, they cannot be charged attorneys' fees by class counsel under the guise of the common fund doctrine.

[4] The class notice indicates that the Trustee has collected recoveries in the range of $10 billion, noting that "[p]ublished reports have suggested that the Madoff Trustee has collected nearly half of the principal that investors lost in the fraud (*see, e.g.*, New York Times, Business Day, "Court Approves $7.2 Billion Madoff Settlement," January 13, 2011)." (Notice of Pendency of Consolidated Actions, Motion for Final Approval of Proposed Settlement, Hearing on Proposed Settlement, and Motion for Attorneys' Fees and Expenses ("Notice") (Docket No. 419-2) at 6.)

million. Accordingly, the portion of the class settlement that improperly diverts funds from putative class members that opt out should be rejected.

*Second*, the Settlement Agreement provides that most of the Settling Funds—including those Funds in which the Spectrum Funds invested—will assign to the class any legal claims they have against the Bank of New York Mellon (the Settling Funds' custodian) and KPMG LLP and Ernst & Young LLP (the Settling Funds' auditors). (Settlement Agreement at ¶ 2.17(a)-(b).) The Settlement Agreement expressly provides that these assignments will be for the "benefit of the State Law Subclass and Securities Subclass." (*Id.* at ¶ 2.17.) The Agreement further provides that the class will use the Settlement Fund to indemnify the Settling Defendants from any damages, judgments, settlement payments, or attorneys' fees incurred in the defense of any claim asserted by any party against one or more of the Settling Defendants in any proceedings involving these assigned claims. (*Id.* at ¶ 2.19.) If these claims result in damages, they would have been recoverable by the Settling Funds, who under the terms of their partnership agreements would be required to distribute them to *all* limited partners. Instead, they are being improperly diverted for the sole benefit of the class.

*Third*, the Settlement Fund includes $100 million in cash *plus* additional amounts from the Fidelity Bond Recovery and any amounts remaining in Tremont Group Holdings, Inc. after the wind down of its and its subsidiaries' operations. (*Id.* at ¶¶ 2.6-2.9.) As defined by the Settlement Agreement, the Fidelity Bond Recovery is 50 percent of any recovery from the Settling Defendants' litigation against their insurance carriers (after the fees and expenses of prosecuting that litigation are deducted). (*Id.* at ¶ 1.16.) To the extent that these claims are owned by the Funds, they are similarly being improperly diverted.

II.   **The Plan of Allocation Impermissibly Purports to Govern Distributions From the Fund Distribution Account to Opt-Outs.**

Finally, the class asks this Court to approve a Plan of Allocation for the Fund Distribution Account, which would govern, among other things, the distribution of proceeds generated by the efforts of the SIPC Trustee to opt-outs. As that Plan of Allocation makes clear, and as noted above, the Fund Distribution Account is to be distributed to "Fund Distribution Claimants," a term that includes persons opting out of the class. (Settlement Agreement at ¶ 1.18; Fund Distribution Account Plan of Allocation ("Plan of Allocation") (Docket No. 419-2, Ex. 2) at 1.) In fact, the class notice informs class members that "[o]pting out of the class will have no effect on your rights to receive a payment from the Fund Distribution Account" and that distribution of the Fund Distribution Account will be "governed by the terms of the Settlement . . . regardless of whether you . . . opt out of the Settlement." (Notice at 20, 17.) The Plan of Allocation provides that (unlike the Net Settlement Fund), distributions out of the Fund Distribution Account are to be made based on the "ending balance in the [limited partner's] capital account as reflected on the [limited partner's] last monthly account statement for the calendar year ending December 2008." (Plan of Allocation at 3.)

In addition, regardless of whether a limited partner opts out of the class, the Plan of Allocation limits that limited partner's legal rights with respect to payments from the Fund Distribution Account. It provides that "[n]o Person shall have any claim under any circumstances against the Released Parties based on any Disbursements, determinations or claim rejections or the design, terms or implementation of this Plan." (*Id.* at 4.)

Class plaintiffs thus ask the Court to approve a Plan of Allocation distributing monies to persons who have chosen not to participate in the class. This Court does not have the authority to approve a Plan mandating the terms of any such payment to opt-outs. *See, e.g., In re OSB*

*Antitrust Litig.*, No. 06-826, 2009 WL 579376, at *2-*3 (E.D. Pa. Mar. 4, 2009) (holding that the court had no basis to order opt-outs to pay class counsel fees and that opt-outs were not bound by jurisdictional provision for disputes agreed to by class). Similarly, the Court does not have the authority to limit the rights of opt-outs, who have expressly reserved their independent rights, to sue parties over distributions out of the Fund Distribution Account. These matters are simply outside the present "cases and controversies" before this Court. Accordingly, the Court should reject the Fund Distribution Account Plan of Allocation as outside of its jurisdiction and as it fails the fairness requirement of Rule 23(e)(2).[5]

## CONCLUSION

For the foregoing reasons, the Spectrum Funds respectfully request that the Court deny final approval of the Proposed Settlement and the request by class counsel for the State Law and Securities Law Subclasses for an award of attorneys' fees.

---

[5] Because this Court does not have the authority to approve any Plan of Allocation that governs the distribution of monies from the Fund Distribution Account to opt-outs, the Spectrum Funds are not at this time taking any position with respect to the content of the proposed Plan of Allocation and expressly reserve all objections to any specific plan.

Dated: May 11, 2011.

          **ROSS & ORENSTEIN LLC**

          By:   /s/ John B. Orenstein
          Jeff Ross
          John B. Orenstein
          100 South Fifth Street, Suite 1200
          Minneapolis, MN 55402
          Telephone: (612) 436-9801
          Facsimile: (612) 436-9819

          **FAEGRE & BENSON LLP**
          James L. Volling
          Michael F. Cockson
          2200 Wells Fargo Center
          90 South Seventh Street
          Minneapolis, MN 55402
          Telephone: (612) 766-7000
          Facsimile: (612) 766-1600

          **ATTORNEYS FOR SPECTRUM SELECT II, L.P. AND SPECTRUM EQUITIES, L.P.**